UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

JOHN L. GALLO *et al.*, Individually and
on behalf of all others similarly situated,

        Plaintiffs,

vs.

MOEN, INC.,

        Defendant.

------------------------------------------------------------

CASE NO. 1:13-CV-02440

OPINION & ORDER
[Resolving Doc. 66]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this ERISA case, Plaintiffs petition for attorney's fees and costs under 29 U.S.C. § 1132(g)(1).[1] Defendant Moen opposes, arguing that a fee award of any amount is inappropriate; that even if a fee award is appropriate, the fees requested are unreasonable; and that the costs Plaintiffs seek are excessive.[2] For the reasons below, the Court **GRANTS** Plaintiffs' motion for attorney's fees and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for costs.

Because the Court's order granting summary judgment to Plaintiffs and a permanent injunction against Defendant Moen sets out the facts and procedural history in detail,[3] this opinion addresses them only as relevant to the award of fees and costs.

**I. Availability of Attorney's Fees and Costs**

ERISA provides that "in the Court's discretion," the Court may award a party who can

---

[1]Doc. 66.
[2]Doc. 67. Plaintiffs have filed a reply. Doc. 68.
[3]Doc. 61.

Case No. 1:13-CV-02440
Gwin, J.

"show some degree of success on the merits" reasonable attorney's fees and costs.[4] The Sixth Circuit has identified five factors that a district court should consider in determining whether an award of attorney's fees and costs is appropriate under 29 U.S.C. § 1132(g)(1). These factors are:

> (1) [T]he degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.[5]

These factors are flexible, and none of them are necessarily dispositive.[6]

Plaintiffs claim that all five factors counsel in favor of awarding fees and costs. Moen disputes only the first and third factors. The Court addresses each factor in turn.

First, the Court considers the opposing party's culpability or bad faith. In assessing this factor, the Court considers both subjective bad faith and objective culpability. Thus, a party can be culpable without possessing an ulterior motive if its position lacks justification.[7] Although Defendant Moen is correct that liability for fees and costs does not follow automatically from losing an ERISA suit, it pushes the argument too far when it suggests that its culpability was "relatively slight" and did not "approach[] bad faith."[8]

Rather, the clarity of the issue in this case renders Moen's behavior culpable. To begin with, the collective bargaining agreements and the plant termination agreement unambiguously indicate

---

[4] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citing 29 U.S.C. § 1132(g)(1)).
[5] *Armistead v. Venitron Corp.*, 944 F.2d 1287, 1301 (6th Cir.1991) (quoting *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985)).
[6] *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir.1996).
[7] *See McPherson v. Employees' Pension Plan of Am. Re Ins. Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994); *Schumacher v. AK Steel Corp Ret Acc. Pension Plan*, 995 F. Supp. 2d 835, 840 (S.D. Ohio 2014).
[8] Doc. 67 at 7.

Case No. 1:13-CV-02440
Gwin, J.

an intent to vest the retirees' insurance benefits. Under *Yard-Man*, "when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree."[9] And in the recent *Kelsey-Hayes* decision, language extremely similar to that present in this case combined with the *Yard-Man* inference to unambiguously establish lifetime benefits.[10]

Moen's citation to the collective bargaining agreements' reservation of Moen's right to modify coverage fails to overcome this conclusion for two reasons. First, those provisions applied to employees, not retirees, and those terms were used disjunctively in various parts of the agreements. Second, the reservation was limited by a requirement that benefits be maintained, effectively limiting Moen's right under the provision to a right to change its insurance carrier. Even as to current employees, the provision did not give Moen a right to terminate coverage altogether.[11]

Moreover, even if the agreements were ambiguous, extrinsic evidence would clarify that the retirees' insurance benefits had vested. In particular, the fact that Moen continued to pay for the retirees' benefits for extended periods of time suggests an understanding that the benefits were vested.[12]

In light of the clear contractual language and supportive extrinsic evidence, Moen's actions were culpable. The first factor thus counsels in favor of awarding attorney's fees and costs.

Second, the Court reviews the opposing party's ability to satisfy an award of attorney's fees

---

[9] *Int'l Union, United Auto. Aerospace, & Agric. Implement Workers of Am. (UAW) v. Yard Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983).

[10] *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.& Serv. Workers Int'l Union, AFL CIO CLC v. Kelsey Hayes Co.*, 750 F.3d 546, 549 (6th Cir. 2014).

[11] *See* Doc. 61 at 23-27.

[12] *Id.* at 28-29.

Case No. 1:13-CV-02440
Gwin, J.

and costs. As Plaintiffs note, the Court has previously found that "Moen has significant resources."[13] And as Plaintiffs also note, Moen does not contest this factor.[14] Accordingly, it counsels in favor of awarding attorney's fees and costs.

Third, the Court considers the deterrent effect of an award on other persons under similar circumstances. Here, there may be some deterrent effect to companies in Moen's position in the future. However, the relative size of the benefit obligations at stake and the attorney's fees may mitigate this effect to some degree.[15] Therefore, the Court concludes that the possibility of deterrence counsels weakly in favor of an award.

Fourth, the Court considers whether Plaintiffs sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA. Here, the injunction Plaintiffs obtained will ensure that the participants and beneficiaries of Moen's plan will continue to receive their vested lifetime benefits. This factor also counsels in favor of an award of fees and costs.

Finally, the Court considers the relative merit of the parties' positions. As described above, Plaintiffs' position had clear merit, while Defendant Moen's position did not. Accordingly, this factor also counsels in favor of an award.

After weighing these five factors, especially Moen's culpability, the Court concludes that the circumstances of this case clearly justify an award of attorney's fees and costs.

## II. Challenges to Attorney's Fees

---

[13] Doc. 66 at 5 (quoting Doc. 41 at 5).
[14] Doc. 68 at 2.
[15] Doc. 66 at 6 ("Perhaps no cost is high enough to deter an employer which stands to save tens of millions in benefit obligations.").

Case No. 1:13-CV-02440
Gwin, J.

Courts presumptively use the lodestar approach to determine fees in ERISA cases.[16] Under this approach, which both parties accept, a reasonable fee is determined by multiplying a "court-ascertained reasonable hourly rate" by "the proven number of hours reasonably expended on the litigation."[17]

### A. Challenges to Hourly Rates

Plaintiffs' motion for fees seeks hourly rates of $550 for Joyce Goldstein, $525 for Richard Stoper, and $300 for Julie Wagner. In describing Goldstein's qualifications, Plaintiffs note that she has extensive experience in ERISA and related litigation, as well as numerous professional accolades in the area.[18] They note that Stoper has "30 years of experience practicing in complex litigation in the federal trial and appellate courts in areas relating to antitrust, securities, ERISA, labor, and white collar criminal defense."[19] And they point to Wagner's seven years of experience, "many of them in ERISA litigation."[20] Defendants do not challenge that $300 is a reasonable hourly rate for Wagner, and they agree that Stoper's hourly rate should be $25 less than Goldstein's.[21] The parties, however, sharply dispute the reasonableness of Plaintiffs' suggested hourly rate of $550 for Goldstein.

As the Sixth Circuit has explained, a reasonable hourly rate is "the market rate in the venue sufficient to encourage competent representation."[22] Plaintiffs point to several sources to support

---

[16] *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.& Serv. Workers Int'l Union, AFL CIO CLC v. Kelsey Hayes Co.*, 750 F.3d 546, 560 (6th Cir. 2014).
[17] *Id.*
[18] Doc. 66 at 9-10.
[19] *Id.* at 13.
[20] *Id.*
[21] *See* Doc. 67 at 5-7.
[22] *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007).

Case No. 1:13-CV-02440
Gwin, J.

the $550 hourly rate. First, they point to the $400 hourly rate then-Judge Oliver approved for her in *Rose v. Volvo Construction Equipment North America, Inc.*, a case filed in 2005, and note that an annual 4% cost of living adjustment (COLA) measured from 2005 would produce rates of $547 in 2013 and $569 in 2014.[23] Next, Plaintiffs argue that the rate in question would be "consistent with rates approved by other courts," mostly from the Southern District of Ohio.[24]

Plaintiffs also point to the United States Attorney's Office *Laffey* Matrix, which "is intended to be used in cases in which a fee-shifting statute permits the prevailing party to recover reasonable attorney's fees," and which provides an hourly rate of $510 for work done by attorneys with more than 20 years of experience in Fiscal Year 2013-14.[25] Plaintiffs further note that their proposed hourly rates are lower than the rates charged by defense counsel in this case.[26] And finally, plaintiffs rely on the affidavit of William Payne, an experienced ERISA litigator, that states that his current hourly rate is $575 and that he believes the requested fee award is reasonable.[27]

Defendant Moen responds that the $400 hourly figure from *Rose* should be measured from 2009, when it was awarded, and that actual COLAs as measured by the Social Security Administration should be used rather than 4% per year. This would result in a hourly rate of

---

[23]Doc. 66 at 11-12 & n.10 (citing the fee decision in *Rose*); *cf Schumacher v. AK Steel Corp Ret Acc. Pension Plan*, 995 F. Supp. 2d 835, 844 (S.D. Ohio 2014) (noting that courts have often applied a 4% annual COLA as part of measuring the reasonableness of requested hourly rates).

[24]Doc. 66 at 12.

[25]Doc. 66-12. Although the filed attachment runs only to the 2012-13 fiscal year, reflecting a rate of $505, the updated matrix, available on the website of the United States Attorney's Office for the District of Columbia, includes the $510 figure for fiscal year 2013-14. *See* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf.

[26]Doc. 66 at 13.

[27]Doc. 66-13.

-6-

Case No. 1:13-CV-02440
Gwin, J.

$427.77.[28]

Moen criticizes the *Laffey* matrix as focusing on Washington, D.C., and the out of jurisdiction cases for failing to reflect the Cleveland market.[29] Further, Moen points out that the *Laffey* matrix suggests a rate $40 less than what Goldstein seeks.[30] As to Plaintiffs' reliance on the defense attorneys' hourly rates, Moen incongruously says that they are irrelevant to what fee is reasonable.[31] Against a backdrop where plaintiffs' counsel won the case, it is unclear why the fees Moen paid to lose the case are irrelevant.

And as to Payne's declaration, Moen argues that as a Pittsburgh attorney, Payne's rate is irrelevant to the determination of the fee in the Cleveland market.[32] Fundamentally, Moen's argument is that Plaintiffs have provided no evidence of the Cleveland market rate.

As Plaintiffs point out, however, Moen does not engage with Payne's statement that the "specialized and complicated nature of ERISA class action practice and the scarcity of lawyers with the necessary skills and experience to do this type of work," make "the prevailing relevant market for determining reasonable attorney's rates in these cases . . . a national one."[33] The Court is not entirely convinced that there is no separate Cleveland market for this type of legal services,[34] but in the absence of any evidence to the contrary, the Court accepts the national market for purposes of this case. Fee awards from other districts and the *Laffey* matrix are therefore relevant.

---

[28]Doc. 67 at 6-7 & n.5.

[29]*Id.* at 6.

[30]*Id.*

[31]*Id.*

[32]Most fair observers would say that Cleveland is a much better city than Pittsburgh with comparable or higher legal rates.

[33]Doc. 66-13 at 6.

[34]*See, e.g.,* Schumacher v. AK Steel Corp Ret Acc. Pension Plan, 995 F. Supp. 2d 835, 845-47 (S.D. Ohio 2014) (discussing the issue); Doc. 66-10 (applying a local rather than a national rate in a similar case, albeit in the absence of a statement like Payne's that the relevant market is national).

Case No. 1:13-CV-02440
Gwin, J.

Based on these sources, the Court concludes that Goldstein's asserted hourly rate is reasonable. The Court draws additional support for this conclusion from the fact that her asserted rate is significantly less than those charged by defense counsel, which, contrary to Defendant's argument, is quite relevant to the issue at hand.[35] And although the *Laffey* matrix might suggest a slightly lower rate, the Court concludes that the specialized nature of the litigation justifies the higher hourly rate. Finally, although an annual 4% COLA since 2005 may be a stretch both because it likely overshoots the actual amount of inflation and because a substantial portion of the services compensated in *Rose* were performed in 2006 and 2007 the Court concludes that the rate sought is nonetheless reasonable because of Goldstein's additional experience since *Rose*.[36]

Accordingly, the Court concludes that the claimed hourly rates of $550 for Goldstein, $525 for Stoper, and $300 for Wagner are reasonable.

## B. Challenges to Number of Hours Billed

Defendant Moen also brings a collection of challenges to the number of hours Plaintiffs claim. First, it says that many of the billing entries impermissibly constitute block billing. Second, it claims that Plaintiffs' attorneys' time entries are impermissibly vague. Third, it says that the billing entries reflect an impermissible duplication of services relating to four depositions. And fourth, it claims that the time records indicate attempts to bill for clerical or administrative work not properly includable in an award of attorney's fees. For the following reasons, the Court concludes

---

[35]*See, e.g., Schumacher*, 995 F. Supp 2d at 847 (noting that Defendants' attorneys likely would have sought out of town hourly rates had Defendants prevailed in determining whether Plaintiffs' attorneys were entitled to out of town rates); Doc. 66-10 (considering the rates charged by defense counsel in determining a reasonable hourly rate for Plaintiffs' counsel).

[36]*See Kelly v. Montgomery Lynch & Assocs., Inc.*, 1:07-CV-919, 2008 WL 4560744, at *7 (N.D. Ohio Oct. 8, 2008) (adopting in full a Report and Recommendation that allowed an increased hourly rate due to subsequent experience); Doc. 68 at 7 n.8 (listing Goldstein's additional experience in retiree benefit actions since *Rose* was filed).

Case No. 1:13-CV-02440
Gwin, J.

that none of these objections justify reducing the fee award.

First, Moen challenges the time entries as containing impermissible block billing, that is, the inclusion of multiple activities in one time entry. Such entries can make it difficult for courts to discern whether billed time was spent reasonably, especially where compensable and noncompensable tasks are included in the same entry. Courts therefore sometimes assess across the board reductions where the time entries include pervasive block billing.[37]

On the other hand, block billed entries are not automatically invalid or deserving of a reduction. Rather, they are a problem only when it is not clear from the entries that the time expended was reasonable.[38] Thus, where the activities grouped together are all reasonable and the total time spent on them is reasonable, the mere fact of block billing does not require a reduction.

The Court concludes that none of the examples of block billing that Defendant complains about prevent the Court from determining that the claimed hours are reasonable. For example, Plaintiff challenges a 3.10 hour entry on March 10, 2014, for "Telecon Kirk Watkins, telecon to leave message for Dave Lachance, review email from Carlos Bermudez, review Rule 30(b)(6), drafting letter to Kirk Watkins."[39] As Plaintiffs point out,[40] each of these activities is reasonable, and a total time of 3.10 hours to perform them is reasonable as well. Thus, although the Court agrees with Defendant Moen that block billing is pervasive in Plaintiffs' attorneys' billing entries, the Court declines to reduce the fee award on that basis.

---

[37] *See, e.g., Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (assessing a 10% across the board reduction in hours as a result of "block billing and vague entries").

[38] *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs*, 473 F.3d 253, 273 (6th Cir. 2007) (Moore, J., dissenting) (stating that a block billing objection, which the majority opinion did not reach, lacked merit because the billing entries were "sufficient to assess" their reasonableness and citing supporting case law from other circuits).

[39] Doc. 67 at 8 (quoting Doc. 66-9 at 22)

[40] Doc. 68 at 12-13.

Case No. 1:13-CV-02440
Gwin, J.

Defendant Moen next challenges the time entries as impermissibly vague. Given the burden on the party seeking fees to justify its request, Moen argues, it is not "readily apparent" that entries such as 0.20 hours for "exchange email with client" and 0.40 hours for "Review article by opposing counsel; email client" reflect "work . . . done in connection with this case."[41] The Court disagrees. Particularly given that these entries are from contemporaneous billing records, the Court finds it unlikely that Plaintiffs' counsel was emailing Plaintiffs or reading defense counsel's article for unrelated reasons.

Defendant Moen then seeks to exclude time entries for Goldstein's attendance at four depositions that Stoper also attended and where Stoper was the only attorney who asked any questions.[42] Plaintiffs respond that although Goldstein did not ask questions, she and Stoper "conferred during breaks" at the four depositions in question, that she handled the nine depositions taken by Moen by herself, and that Moen had at least two and sometimes more lawyers present at every deposition taken by either side.[43] Given Moen's staffing of depositions throughout the proceeding, the Court is unwilling to conclude that the presence of two attorneys at some depositions was unreasonable. Accordingly, the Court will not exclude the time Goldstein spent attending the challenged depositions.

Finally, Defendant Moen challenges the billing entries on the ground that they reflect noncompensable administrative or clerical work. In particular, Moen points to three entries that include the phrase "organize file for trial" or "organize file in preparation for trial."[44] Plaintiffs

---

[41] Doc. 67 (quoting Doc. 66-9 at 9, 12).
[42] *Id.* at 9-10.
[43] Doc. 68 at 13-14.
[44] Doc. 67 at 10 (quoting Doc. 66-9 at 36).

-10-

Case No. 1:13-CV-02440
Gwin, J.

respond that trial preparation was reasonable given the rapidity with which the trial date was approaching, but provide no response to the substance of Moen's complaint that these activities were administrative.[45]

Focusing, as Moen does, on these instances, the Court concludes that although the decision is a close one, the entries do not reflect impermissible administrative work. Organizing a file in preparation for trial can be an effective method of trial preparation, rather than merely the alphabetical or chronological reordering of papers. Thus, at least for Stoper, who was handling court appearances along with Goldstein, the three hours spent organizing the file was time reasonably spent.[46]

With respect to Wagner, the call is a closer one. As described in Plaintiffs' motion for fees, Stoper and Goldstein handled "court appearances," while Wagner was brought in to help with discovery after Plaintiffs received many documents from Moen that they had to quickly review and analyze.[47] Since it appears that Wagner would likely not participate in a trial had one been held, it is less clear that time she spent organizing the file is reasonable as trial preparation. Nonetheless, the familiarity with the case that Wagner gained while working on discovery makes it likely that she would organize more efficiently, thus aiding the prosecution of the case.

By contrast, when Wagner expended time to "organize files" on January 30, 2014, before she had performed any discovery work, Plaintiffs' counsel exercised billing discretion and did not charge.[48] The Court thus concludes that Wagner's time spent "organiz[ing] [the] file in preparation

---

[45] Doc. 68 at 14.
[46] See Doc. 66-9 at 36.
[47] Doc. 66 at 15.
[48] Doc. 66-9 at 14.

-11-

Case No. 1:13-CV-02440
Gwin, J.

for trial" was also reasonable.

Having concluded that both the hourly rates and the number of hours claimed are reasonable, the Court will grant Plaintiffs' request for $765,620 in attorney's fees.

### III. Challenges to Costs

Finally, Defendant Moen challenges the reasonableness of the copying costs listed in Plaintiffs' motion for fees and costs. These costs totaled $2,244.00.[49] Moen correctly notes that Plaintiffs' filings provide scant information about these charges. Missing are indications of the date incurred, the documents copied, the recipients of the documents, or the price per page.

In their reply, Plaintiffs say that "[m]any named plaintiffs do not maintain email addresses or have the competency to receive communications by email" and that "Moen propounded interrogatories and document requests to each of the named plaintiffs."[50] It further says that "[m]uch of the copying expenses incurred covered the cost of providing the named plaintiffs and other UAW witnesses with copies of their depositions to review, copies of other filings in the case, and copies of discovery requests propounded by Moen, as well as maintaining a single paper copy of the filings in the case."[51]

As a general matter, courts have frequently held that photocopying expenses are only properly compensable where they are made for the court or an opposing party, rather than for the convenience of counsel.[52] The fact that many named Plaintiffs cannot reasonably access email or electronic filings may soften this rule, but the Court need not decide this question. That is because Plaintiffs'

---

[49] *Id.* at 39-40.
[50] Doc. 68 at 14.
[51] *Id.*
[52] *See, e.g.,* Moore v. Menasha Corp., No. 1:08-CV-1167, 2013 WL 308960, at *5 (W.D. Mich. Jan. 25, 2013); Vistein v. Am. Registry of Radiologic Technologists, No. 1:05-CV-2441, 2010 WL 918081, at *8 (N.D. Ohio Mar. 10, 2010).

Case No. 1:13-CV-02440
Gwin, J.

general statements regarding the copies' purpose do not cure the billing records' lack of specificity. Even with the additional information, the dates, purpose, recipients, and per page cost of each entry remain opaque.[53] Given that the party seeking costs has the burden of establishing entitlement to them, the Court concludes that the $2,244 in claimed copying costs must be disallowed.

Accordingly, the Court will exclude the claims for $2,244 in copying costs in their entirety and award Plaintiffs the remaining claimed costs of $11,147.19.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for attorney's fees in the amount of $765,620 and **GRANTS IN PART** and **DENIES IN PART** their motion for costs. The Court allows costs in the amount of $11,147.19, reflecting the disallowance of $2,244 in copying costs. This leaves the total award of fees and costs at $776,767.19.

IT IS SO ORDERED.

Dated: September 11, 2014            s/            *James S. Gwin*
                                     JAMES S. GWIN
                                     UNITED STATES DISTRICT JUDGE

---

[53] *Cf. Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("Allowing a several thousand dollar payment for photocopying expenses without looking into the cost per photocopy is exemplary of an impermissible laxity.").